**Yvadne J. ANDERSON, Appellant,**

v.

**Robert FINCH, Secretary of the Department of Health, Education and Welfare, Appellee.**

**No. 13509.**

United States Court of Appeals, Fourth Circuit.

Oct. 20, 1970.[*]

---

[*] This case was argued February 2, 1970, before a panel consisting of Haynsworth, Chief Judge, and Boreman and Winter, Circuit Judges. By agreement of counsel the case was resubmitted en banc on August 17, 1970.

A. Arthur Rosenblum, Charleston, S. C., for appellant.

Judith S. Seplowitz, Atty., Dept. of Justice (William D. Ruckelshaus, Asst. Atty. Gen., and Robert V. Zener, Atty., Dept. of Justice, and Klyde Robinson, U. S. Atty., on brief) for appellee.

Before HAYNSWORTH, Chief Judge, SOBELOFF, BOREMAN, BRYAN, WINTER, CRAVEN and BUTZNER, Circuit Judges.

WINTER, Circuit Judge:

This appeal presents the question whether an extension of Social Security Act coverage to self-employed physicians "with respect to taxable years ending on or after December 31, 1965" operates to effect coverage of a self-employed physician who died during 1965. The district court held that it did not. We reverse and remand for entry of judgment for the plaintiff.

In order to be eligible for Social Security benefits, one must have received "covered" income during a certain number of quarter-yearly periods. 42 U.S. C.A. § 414(a). Dr. Anderson, plaintiff's deceased husband, needed 14 quarters of coverage at the time of his death to entitle his survivors to benefits. He had accumulated 13 of these at private and military employment in 1947–50.

Before 1965, the practice of medicine was expressly excluded from the definition of "trade or business" in connection with self-employment income. In 1965, the Act was amended to eliminate this exclusion "with respect to taxable years ending on or after December 31, 1965." [1] Dr. Anderson was employed as a private physican during 1965, and earned in excess of $28,000. Pursuant to the amended Act, he paid self-employment tax on his earnings for the first three quarters of the year.[2] On November 9, 1965, Dr. Anderson died, and his wife applied for survivor's benefits for herself and their minor children, claiming that her husband's 1965 earnings had been covered. The hearing examiner denied the application, holding that Dr. Anderson had not been covered during 1965, since his taxable year ended on the day of his

1. P.L. 89–97, 79 Stat. 381, amending § 211(c) (5) of the Act, 42 U.S.C.A. § 411 (c) (5).

2. The Secretary, in denying benefits to the widow and minor children on the ground that the Act was not applicable to the deceased, advised the widow to seek a refund of the tax from the taxing authorities. Rev.Rul. 68.458, C.B. 1968–2, p. 388 supports this advice. The revenue ruling, however, rests upon 26 U.S.C.A. § 7701(a) (23), which is not pertinent to the present problem. See n. 4, infra.

death rather than on or after December 31 as required by the amendment. The Secretary refused to review the case, the district court affirmed the Secretary's decision, and Dr. Anderson's widow appealed.

The Secretary reasoned that the amendment's applicability to "taxable years ending on or after December 31, 1965" must be interpreted by reference to a *preexisting* section of the Act—§ 211 (e), 42 U.S.C.A. § 411(e)—which defines "taxable year" to have "the same meaning as when used in chapter 1 of Title 26, Internal Revenue Code * * *; and the taxable year of any individual shall be a calendar year unless he has a different taxable year for the purposes of chapter 1 of Title 26, * * * in which case his taxable year for the purposes of this subchapter shall be the same as his taxable year under chapter 1 of Title 26 * * *." Sections 441(b) and 443(a) are the relevant portions of chapter 1 of Title 26, and their texts are set forth below.[3] Since, under these provisions, "taxable year" is defined as "the period for which the return is made, if a return is made for a period of less than 12 months," and since the estate of the deceased was required to file an income tax return for something less than the full calendar year, the Secretary concluded that his taxable year for 1965 ended on November 9, 1965, the date of his death. Hence, the deceased's taxable year did not end on or after December 31, 1965, and, therefore, expanded coverage under the Act was not applicable to him.

The statutes do not need to be read so narrowly and we believe that the intent of Congress was that they should not.

The deceased, when he was alive, was reporting his income on a calendar basis. For 1965, until the date of his death, his taxable year was the calendar year ending on December 31, 1965. True, because he died on November 9, his estate was required to file a return for less than the full calendar year (§ 443(a) (2)), and for this purpose the period January 1, 1965, to November 9, 1965, is also defined as his taxable year (§ 441(b) (3)). But although the definitions of "taxable year" are in the disjunctive, nothing contained therein prevents "taxable year" from having more than one meaning.[4] At the beginning of 1965 the deceased's taxable year was the calendar year, anticipated to end December 31, 1965 (§ 441 (b) (1)), and § 441 is sufficiently ambiguous to allow that to continue to be the case after his death for purposes of the Social Security provision. Sections 441(b) (1) and (3) seem to provide a choice of definitions, one effecting coverage and the other excluding coverage. The intention of Congress becomes crucial in these circumstances.[5]

---

3. **§ 441. *Period for computation of taxable income***
   *   *   *   *   *
   (b) *Taxable year.*—For purposes of this subtitle, the term "taxable year" means—
      (1) the taxpayer's annual accounting period, if it is a calendar year or a fiscal year;
      (2) the calendar year, if subsection (g) applies; or
      (3) the period for which the return is made, if a return is made for a period of less than 12 months.
   **§ 443. *Returns for a period of less than 12 months***
   (a) *Returns for short period.*—A return for a period of less than 12 months (referred to in this section as "short period") shall be made under any of the following circumstances:
   *   *   *   *   *

      (2) *Taxpayer not in existence for entire taxable year.*—When the taxpayer is in existence during only part of what would otherwise be his taxable year.
      *   *   *   *   *

4. By contrast 26 U.S.C.A. § 7701(a) (23), which is *not* part of chapter 1 of Title 26 and hence is inapplicable to the present problem by the terms of § 311(c) of P.L. 89–97, repeats most of the definitions contained in § 441(b) but specifically *limits* the meaning of "taxable year," where a return is made for a fractional part of a year, to that period for which the return is made.

5. This is especially so because § 211(e) is a preexisting section of the Social Security Act. We have grave reservations that Congress had the preexisting definition of taxable year in mind when it

The legislative history of the amendment leads to the conclusion of coverage. Section 311(c) of P.L. 89–97 originated as H.R. 6675. As passed by the House, the bill would have extended coverage to self-employed doctors for taxable years "ending after December 31, 1965." The bill was amended in the Senate, and subsequently enacted, to extend coverage "to taxable years ending *on or after* December 31, 1965." (emphasis supplied.) The purpose of the amendment, as stated in the report of the Senate Finance Committee, was to make it possible "for most self-employed physicians to obtain social security protection 1 year earlier than under the House bill— for calendar year 1965." [6] But the Secretary's interpretation would frustrate this purpose with respect to survivor's benefits. Under the House bill, every deceased doctor would be required to survive until January 1, 1966 (and have reported his 1965 income on a calendar basis) to be covered. If he survived he would be covered during all of 1966, or such part of 1966 as he lived. Under the adopted amendment as interpreted by the Secretary, every deceased doctor would be required to survive until December 31, 1965 (and have reported his income on a calendar basis) to be covered. The "1 year earlier" intended by Congress manifestly meant *during* 1965, not solely on the last day of 1965. Of course, even under the Secretary's interpretation, doctors would be eligible "1 year earlier * * *—for calendar year 1965" for benefits other than survivor's benefits. But since the Committee referred to "social security protection"

rather than "partial protection" as being available a year earlier, the committee report seems to support the view that Congress intended the term "taxable year" to be defined, for purposes of the amendment, without regard to the death of the taxpayer. We think that the phrasing "most [but not *all*] physicians," on which the Secretary placed heavy reliance at argument, was employed only in recognition of the fact that some physicians report on the basis of a fiscal year and some of them might die in 1965 before the end of their 1965 fiscal year.

Even aside from the legislative history of the amendment, the interpretation of § 441 as effecting coverage is more consistent with a fair and symmetrical administration of the Social Security system. If the Secretary's interpretation were adopted, Dr. Anderson and others in his position would have been required to pay up to three quarters of social security tax beyond the statutory test for coverage contained in 42 U.S.C.A. § 414(a) before becoming entitled to full benefits. Moreover, during 1965 they would have been in the anomalous position of being "fully insured individuals" within the meaning of the Act for some purposes but not others: for disability payments, for example, but not survivor's benefits. Indeed, logically it would seem that even disability benefits accruing to a person in Dr. Anderson's position during 1965 would have to be withheld until January, against the possibility that he might die before the calendar year ended. It is impossible to believe that Congress intended these un-

amended and enacted H.R. 6675. Certainly the fact that the definition was not included or reenacted in H.R. 6675 gives greater leeway in statutory construction so as to effectuate the intention of Congress to expand coverage "for calendar year 1965."

6. The committee's bill would cover the self-employment income of the approximately 170,000 self-employed doctors of medicine on the same basis as the self-employment income of other professional groups. The committee amended the provision in the

House bill so as to make social security coverage for self-employed doctors of medicine effective for taxable years ending on or after December 31, 1965. Under the House bill, coverage could be effective for taxable years ending after December 31, 1965. *This change would make it possible for most self-employed physicians to obtain social security protection 1 year earlier than under the House bill—for calendar year 1965.* (emphasis supplied.) S.Rep. 404, 1965 U.S.Code Cong. & Adm. News, pp. 2051–2052.

fairnesses and anomalies without saying so explicitly.

Reversed and remanded.

HAYNSWORTH, Chief Judge whom Boreman, Circuit Judge joins, (dissenting):

I would readily join the majority if I thought the statutes were reasonably susceptible to the interpretation given them, but I do not think they are.

Self-employment income derived from a trade or business is subject to social security taxes, and persons so taxed are eligible for old age and survivors' benefits. Before 1965 the definition of "trade or business" found in 42 U.S.C.A. § 411(c) [1] expressly excluded the performance of services by a self-employed physician. In 1965 physicians were brought under social security coverage by deleting this exclusion from the statutory definition. The amendment provided that it was to take effect "only with respect to taxable years ending on or after December 31, 1965." [2]

The question in this case is a simple one—whether Dr. Anderson's last taxable year ended on December 31, 1965, as it would have had he lived, or on November 9, 1965, the date of his death.

Without a specific definition of the term "taxable year," we might be free to speculate as to its meaning and to interpret it as we thought appropriate, but Congress has defined the term with clarity and precision. The obligation of a court in such a situation is to effect the apparent congressional intention, though we may wish that the Congress had chosen some other alternative.

The term "taxable year" is defined in the Social Security Act by reference to the definitions in the Internal Revenue Code. A taxpayer's taxable year for purposes of imposition of taxes on income, is also his taxable year for social security purposes. [3] The statutory definition predates the 1965 amendment and is applicable to it.

"Taxable year" is a highly technical term of art. It has neither meaning nor existence outside of the Internal Revenue and Social Security Acts. When Congress defines such a term in the statute to which it applies, and in subsequent amendments to that statute uses the term again without any qualification, it cannot be supposed that it means something different in the amendment than in the original. Thus, under the express and unqualified command of 42 U.S.C.A. § 411(e), if Dr. Anderson's taxable year for the purpose of assessing tax on his income in 1965 was some period other than the calendar year ending on December 31, it was the same period for the purpose of determining whether his income in that year was derived from a "trade or business." [4]

1. Subject to the specific exceptions contained in § 411(c) a trade or business is defined as having the same meaning as it does when used in the Internal Revenue Code of 1954. Reference to the definitions in the Internal Revenue Code, almost without exception, is the method of defining such terms in the Social Security Act.

2. P.L. 89–97, 79 Stat. 381, amending § 211 (c) (5) of the Act, 42 U.S.C.A. § 411(c) (5).

3. *"Taxable year.* The term 'taxable year' shall have the same meaning as when used in chapter 1 of Title 26, Internal Revenue Code of 1939; and the taxable year of any individual shall be a calendar year unless he has a different taxable year for the purposes of chapter 1 of Title 26,

Internal Revenue Code of 1939 in which case his taxable year for the purposes of this subchapter shall be the same as his taxable year under chapter 1 of Title 26, Internal Revenue Code of 1939." 42 U.S.C.A. § 411(e).

The references to chapter 1 of the Internal Revenue Code of 1939 are to be read as referring to Subtitle A [Income Taxes] of the Internal Revenue Code of 1954 which replaced chapter 1 of the 1939 Code. 26 U.S.C.A. § 7852(b).

4. It can hardly be disputed that the definition of a taxable year is applicable when the beginning or ending date of a taxable year is used to determine the effective date of an amendment. Express recognition is given to this application by 26 U.S.C.A. § 441(f) (2), which provides that

"Taxable year" is defined in two separate sections of the Internal Revenue Code, 26 U.S.C.A. § 7701(a) (23) [5] and 26 U.S.C.A. § 441(b).[6] Section 7701 (a) (23) is a definition applicable throughout Title 26, but with specific reference to Subtitle A. Section 441(b) applies only to Subtitle A [Income Taxes] of Title 26. If the two sections were different in any material respect, a question would arise as to which would have controlling effect, but I can discern no difference between the two, apart from inconsequential differences in phraseology, and see no need to consider § 7701(a) (23) separately.[7]

Because Dr. Anderson died before the end of 1965, a return was required to be filed for the short period beginning at the first of the year and ending on the date of his death.[8] It is apparently conceded that this short period was his taxable year for the purpose of determining his tax liability.[9] However, it is

---

in any case where the effective date of a Code provision is fixed in terms of a taxable year beginning or ending on, or including, a particular date, a special accounting period of 52–53 weeks will be deemed to have begun and ended on the dates on which the nearest corresponding fiscal or calendar year began and ended. The effect of this section is to alter the interpretation of "taxable year" for such accounting periods. Thus, a 52–53 week accounting period which ended on Saturday, December 25, 1965 would not be a "taxable year ending on or after December 31, 1965" but for § 441(f) (2), under which it is treated, for the purpose of determining the amendment's effective date, as ending on December 31 rather than December 25.

5. "(a) When used in this title, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof—

　*　　*　　*　　*　　*

　(23) *Taxable year.* The term 'taxable year' means the calendar year, or the fiscal year ending during such calendar year, upon the basis of which the taxable income is computed under Subtitle A. 'Taxable year' means, in the case of a return made for a fractional part of a year under the provisions of Subtitle A or under regulations prescribed by the Secretary or his delegate, the *period for which such return is made.*"

6. "(b) *Taxable year.*—For purposes of this subtitle, the term 'taxable year' means—

　(1) the taxpayer's annual accounting period, if it is a calendar year or a fiscal year;

　(2) the calendar year, if subsection (g) [applicable only to taxpayers who keep no books, have no annual accounting period, or have an accounting period which fails to qualify as a fiscal year] applies; or

　(3) the period for which the return is made, if a return is made for a period of less than 12 months."

7. The fact that both § 441(b) and § 7701 (a) (23) are expressly applicable to the same substantive provisions is a strong indication of identity of meaning. It should be noted also that § 7701(a) (23) is the direct descendant of § 48 of chapter 1, 1939 Code. It was carried over without change except for the substitution of "Subtitle A" for "this chapter", and substitution of "Secretary or his delegate" for "Commissioner with the approval of the Secretary." These two alterations reflect the renumbering of Code sections and the reorganization of the Internal Revenue Service respectively. That the present § 7701(a) (23) is not physically contained within Subtitle A is not relevant to its applicability.

8. "(a) *Returns for short period.*—A return for a period of less than 12 months (referred to in this section as 'short period') shall be made under any of the following circumstances:

　*　　*　　*　　*　　*

　(2) *Taxpayer not in existence for entire taxable year.*—When the taxpayer is in existence during only part of what would otherwise be his taxable year." 26 U.S.C.A. § 443.

9. Apparently Dr. Anderson's return included a computation of tax on his self-employment income for 1965, under chapter 2 of subtitle A, 1954 Code. The Secretary's decision advised Mrs. Anderson to apply for a refund of any such tax paid, relying on a revenue ruling previously made in connection with an identical occurrence. Rev.Rul. 68–458. It is argued that the ruling is not pertinent to this case, because the ruling concerned a deceased physician's liability for tax rather than his eligibility for benefits, but the two things are measured by the same standard. The implication that Dr. Anderson could be eligible to receive so-

suggested that § 441(b) does not limit the taxable year of one individual in one year to a single meaning, and that Dr. Anderson's taxable year might have been both the short period and the calendar year 1965. The statute seems to me much more precise and inflexible.

A taxable year as defined in § 441(b) may be "the taxpayer's annual accounting period" or "the period for which the return is made." The alternative which applies to a particular taxpayer in a particular year depends on the happening of a specified condition precedent to its application. If the accounting period is a calendar year or a fiscal year and a return for a shorter period is not required, the accounting period is the taxable year. If a return is required for a short period, the short period is the taxable year. Both definitions cannot apply to the same taxpayer in the same year because both conditions cannot exist in a single year with respect to a single taxpayer. If a short period return is filed, the taxable year cannot have been a calendar or fiscal year. If the accounting period is a calendar or fiscal year, a short period return cannot be filed. The limitation to a single meaning need not be express, because it is necessarily inherent. The latter of these two possible conditions occurred in Dr. Anderson's case, and his taxable year was the period, ending on November 7, for which his return was filed. Since it ended before December 31, 1965, his income for that year was not attributable to a "trade or business" for the amendment making it so was not effective.

Finally, it is suggested that to hold that Dr. Anderson's taxable year ended with his death would produce an unfair result, and that such a purpose should not be attributed to Congress. We would all agree, of course, that our private notions of fairness cannot prevail in the face of a contrary congressional command, especially in an area in which Congress has striven for so many years for technical precision. It has attained it here, for it is more than mere inference from the statutory language which supports the conclusion that for social security purposes a person's taxable year must end on the date of his death. In the Social Security Act Congress has expressly referred to this situation and has provided rules for determining self-employment income from a partnership of a deceased partner "for his taxable year which ends as a result of his death * * *" 42 U.S.C.A. § 411(f). A similar provision is contained in the Self-Employment Tax Act. 26 U.S.C.A. § 1402(f). This explicit congressional recognition of the termination of a taxable year, for social security purposes, by the taxpayer's death, should remove any doubt that the natural reading of the amendment is also the correct and intended one.

Little significance, I think, can be placed on the language in the committee report that the Senate amendment to the effective date provision "would make it possible for most self-employed physicians to obtain social security coverage one year earlier than under the House bill—for calendar year 1965." This is no more than a recognition that the overwhelming majority of individual taxpayers report their income on a calendar year basis, and that most of them will survive until the end of the year. It af-

cial security benefits without being liable for any social security tax is hardly compatible with sound administration of the Act. The provisions for benefits for self-employed persons and those for self-employment taxation to provide a fund out of which those benefits can be paid are obviously complementary. If the revenue ruling correctly reflects the law on tax liability, as I believe it does, it must be highly persuasive, if not controlling, as to eligibility for benefits. That it relies on § 7701(a) (23) rather than on § 441(b) for the definition of "taxable year" in the context of subtitle A is quite irrelevant, for reasons already stated. See note 7, *supra.*

fords no support for treating fiscal year taxpayers who failed to survive to the end of the year differently from calendar year taxpayers who do not survive.

Had the construction placed upon the amendment been contemplated by Congress, it would have been easy to provide for it in language conveying that sense. The amendment could have been written to take effect "with respect to taxable years beginning on or after January 1, 1965" or "after 1964" or "with respect to services performed in 1965." Such provisions, in fact, were utilized in other amendments to the Act.[10]

I think Congress has answered the question for us and that we must apply the congressional answer. In the amendments to the Social Security Act, the Congress demonstrated its knowledge of the effect of technical language referable to taxable years. In 1965 it knew the form of words to employ to reach the results the court would reach. It knew how to avoid it, too. Its choice here compellingly appears deliberate.

I would affirm.

BOREMAN, Circuit Judge, concurs.

10. The number, variety and precision of effective date provisions enacted by Congress is illustrated by examples from only two of the many amendments to the Social Security Act.

In the 1965 amendment the provision for calculating self-employment income from agricultural partnerships was revised. The revision was made applicable "only with respect to taxable years beginning after December 31, 1965." P.L. 89–97, § 312(c). For the first time tips were defined as "remuneration for employment" subject to the taxes and benefits of the Act, but "only with respect to tips received by employees after 1965." P.L. 89–97, § 313(f). Interns employed by hospitals were made subject to the Act "only with respect to services performed after 1965." P.L. 89–97, § 311 (c). Certain employees of non-profit organizations were covered "on the date of enactment of this Act." P.L. 89–97, § 316(c) (2).

When Congress desired to make increased coverage effective substantially before the time when the amendment increasing coverage was adopted, it used precise language to achieve its purpose. The 1956 amendments provided coverage for sharecroppers "with respect to service performed after 1954" and for lawyers, dentists, veterinarians, chiropractors, naturopaths and optometrists, by the same process of deletion of exclusions from the definition of "trade or business" as was used in 1965 to cover physicians, "with respect to taxable years ending after 1954." Act of August 1, 1956, c. 836, 70 Stat. 824. The provision in the 1965 amendment under which members of religious faiths opposed to public assistance could exempt themselves from the Act was made effective "with respect to taxable years beginning after December 31, 1950." P.L. 89–97, § 319 (e).